## SAMUEL GUNN et al. versus GEORGE BUTLER.

By an indenture between a father and his son, the father, in consideration of a sum of money, conveyed his farm to the son, with covenants of warranty, and the son covenanted, that he would support the father when he should be unable to support himself, that he would pay certain legacies, and that the several undertakings in the premises, by him to be performed, should be "considered as a charge and lien" on such real estate, and should "have the effect in law to charge the same real estate, as a mortgage security ;" and the father, during his lifetime, and while he was able to labor, was to have the right to occupy the farm, in the same manner as though the indenture had not existed, and his debts, if he should owe any at his decease, were to be paid out of his personal estate by his son. It was held, that, under such indenture, (supposing it valid,) the father had no legal estate in the farm capable of being extended upon by virtue of an execution against him, it not appearing that he had ever entered for condition broken, as upon land under mortgage, or given notice that he held for condition broken.

Held also, that the indenture, as it purports to be made on a pecuniary consideration, and contains onerous stipulations on the part of the grantee, could not be deemed a voluntary conveyance, to be pronounced, per se, fraudulent against creditors as matter of law ; but that if no consideration was in fact paid, if it was a conveyance of the whole of the grantor's estate, if he was indebted at the time, and if the conveyance had a tendency to defraud and defeat or hinder the creditors, the deed was fraudulent and invalid as against creditors.

WRIT of entry. Plea, the general issue. Trial before Wilde J.

The demandants claimed by virtue of an indenture made on

the 13th of December, 1809, and recorded in 1812, between
Gideon Gunn and his son, Calvin, who was the father of the
demandants.  By that indenture, Gideon, in consideration of the
sum of $1200 paid to him by Calvin, conveyed his farm in Pitts-
field to Calvin, his heirs and assigns, to hold to his and their own
proper use, with covenants of warranty ; and Calvin covenant-
ed with Gideon, that whenever the latter and his wife should
be unable, or think themselves unable, to support and maintain
themselves, Calvin, his he'rs &c. should thenceforward, during
the life of Gideon and his wife and the survivor of them, or
during such term as they or the survivor of them should need
such maintenance, or, in case of the wife's surviving, during
her widowhood only, furnish them with a suitable maintenance
and support, it being understood by the parties, that such
rights, credits and personal estate as should appertain to Gid-
eon, should be considered as liable to be applied to such main-
tenance.   The indenture further set forth, that Calvin cove-
nanted with Gideon, that at the expiration of one year after the
decease of the latter, he would pay the sum of $100 to each
of the daughters of Gideon, or, in case of their decease, to or
for the use of their children, unless Gideon should have paid
such sums, or a part thereof, to his daughters, during his life-
time, in which case a corresponding deduction was to be made
from the sums to be so paid by Calvin ; that Calvin, for him-
self, his heirs, &c. further covenanted, that the several under-
takings and duties in the premises, by him to be performed,
should be " considered as a charge and lien on the before
granted real estate," that the same should " have the effect
in law to charge the same real estate as a mortgage security ; "
that Gideon, during his life, should have, while he was able to
labor and to conduct the operations of agriculture, the right to
occupy the real estate, in the same manner as though this in-
denture had not existed ; that the indenture was intended by
Gideon, and understood by both parties, to contain all the
arrangements for the settlement of Gideon's estate, and was
the act that terminated the same ; and that Gideon's debts, if
he should owe any at his decease, were to be paid by Calvin
out of Gideon's personal estate, including his rights and
credits.

The tenant derived his title from the extent of an execution on a part of the real estate above mentioned, made on May 9th, 1821. This execution was issued upon a judgment recovered by the judge of probate in an action brought against Gideon, as the principal in an administration bond, and Timothy Mason, as surety, for the benefit of the heirs of Reuben Gunn. The bond was executed on December 25th, 1798. The tenant, and those under whom he claimed, had been in possession of the real estate in controversy ever since the extent of the execution.

Calvin died in 1813. The demandants were minors at the time of the extent of the execution.

The tenant contended, first, that there had been no valid delivery of the indenture, and secondly, that its legal effect was not to defeat the title derived from the extent of the execution.

Upon the first point, the issue was put to the jury, and then verdict was, that the delivery was valid.

The second point was reserved for the consideration of the whole Court.

If the Court should be of opinion, that the indenture conveyed the land so as to defeat the title under the extent, judgment was to be entered for the demandants ; if otherwise, for the tenant.

*Sept. 22d*

*Hubbard* and *Rockwell*, for the tenant, to the point, that if the indenture was to be considered as an absolute conveyance by Gideon of all his property, the land in controversy still continued subject to the payment of his debts, cited *Graff* v *Smith*, 1 Dallas, 481 ; 5 Dane's Abr. 49 ; *Wilson* v. *Knubley*, 7 East, 128 ; that if it was to be deemed a mortgage, not only to secure the maintenance of Gideon and his wife and the payment of the legacies, but also the payment of the debts of Gideon, still the extent of the execution was valid, and passed the title to the land extended upon, *Jackson* v. *Willard*, 4 Johns. R. 41 ; *Atkins* v. *Sawyer*, 1 Pick. 351 ; *Blanchard* v. *Colburn*, 16 Mass. R. 345 ; *Trowbridge's Reading*, 8 Mass. R. 554 ; *Porter* v. *King*, 1 Greenl. 297 ; and that it was a voluntary and fraudulent conveyance, which was void as against creditors, *Doe* v. *Manning*, 9 East, 59 ; *Russel* v.

*Hammond*, 1 Atk. 15 ; *Twyne's case,* 3 Co. R. 81 ; *Alderton* v. *Temple*, 4 Burr. 2241.

*Bishop*, *Hall* and *Gold*, for the demandants.

SHAW C. J. delivered the opinion of the Court.  The instrument upon which the question arises, between these parties, is a very peculiar one.  It was contended on the part of the tenant, who claims under the levy of an execution, on which the estate was set off, in 1821, as the property of Gideon Gunn, that supposing the deed from Gideon to Calvin to be valid, and to have been duly delivered, still Gideon had such an estate in the land as to justify the levy.  This claim is founded on that clause in the indenture, in which it was stipulated, that the covenants of Calvin should constitute a charge and lien on the land.  Whether the clause would be sufficient to create such lien or *charge,* or whether it would be deemed a declaration of trust to hold for the benefit of all those entitled to beneficial interests in the performance of those covenants, to be enforced in equity, it is not now necessary to decide ; the Court are of opinion, that under that deed, Gideon had no legal estate capable of being levied upon by execution.  The most that can be made of the clause in question is, that it was a mortgage back by Calvin, conditioned for the performance of his covenants.  It does not appear that Gideon, the father, ever entered for condition broken, or gave notice to hold for condition broken, or otherwise treated the estate as a mortgage.

Then the question is, whether, as against creditors, this conveyance from Gideon to his son was valid.  There are, in the provisions of the indenture, circumstances creating a strong suspicion of fraud on creditors, if he was then in debt.  He speaks of it as a final settlement of his estate, and yet there being nothing said of the disposal of the $ 1200, it leaves room to believe, that the consideration was merely nominal, and not intended to be paid.  It has the appearance of being a final disposal of the whole of his property, and most of the stipulations of Calvin are for future provisions for the grantee himself and those dependent on him.  Still, however, as it purports to be made on a pecuniary consideration, and contains ..erous stipulations on the part of the grantee, it cannot be

said to be a voluntary conveyance, to be pronounced fraudulent against creditors as matter of law. But if it be true, as it is now stated, that no consideration was in fact paid, that it was a conveyance of the whole of the grantor's estate, that he was indebted at the time, and that the conveyance had a tendency to defraud and defeat or hinder the creditors, a jury should be instructed, upon finding these facts, to find the deed fraudulent against creditors. It was stated, as a consideration tending to rebut the presumption of fraudulent intent as against creditors, that, by the terms of the contract, Calvin stipulated to pay his father's debts, at his decease. This argument fails in several respects; first, it is only to pay his father's debts out of his, the father's personal property; there was no provision for the payment of his debts in his lifetime, and the creditors would at least be delayed and hindered in the recovery of their debts. Besides, the rights of creditors are not to be affected by a mere executory contract of the debtor with a third person, to pay the debts for him. This stipulation does not essentially alter the character of the transaction.

This case stands clear of the question, often much discussed, upon fradulent conveyances, and the effect and construction of the statutes of 13 and 27 *Eliz.*, whether a voluntary settlement will be held void, as well against a creditor of the grantor, becoming a creditor after a conveyance, as against one who was a creditor at the time. In this case, the debt for which the estate was levied on was a debt originating in a bond to the judge of probate, given long before the conveyance of Gideon Gunn to his son Calvin ; against such a creditor, a voluntary conveyance must be held fraudulent and void.

The Court are of opinion, that as the validity of the deed depends upon the question, whether it was given without valuable consideration, or intended to defeat or hinder creditors, and as this is a mixed question of fact and law, it ought to go to a jury, upon a new trial, under instructions in point of law, as hereinbefore stated. The delivery of the deed under which the demandants claim, having been tried and found for them, on the former trial, the verdict is set aside on the terms that, on the new trial, the tenant will not contest, but will admit that fact.

*New trial granted.*